UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MATTHEW LAUZON, | ) | |
|               PLAINTIFF | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN DODD, *in his individual capacity*; ROGER BEAUPRE, *in his official capacity as Chief of Police for the Biddeford Police Department and in his individual capacity*; AND CITY OF BIDDEFORD, | ) ) ) ) ) ) ) | CIVIL NO. 2:16-cv-51-DBH |
| | ) | |
|               DEFENDANTS | ) | |
| | | |
| LAWRENCE OUELLETTE, | ) | |
|               PLAINTIFF | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORMAN GAUDETTE, *in his individual capacity*; ROGER BEAUPRE, *in his official capacity as Chief of Police for the Biddeford Police Department and in his individual capacity*; AND CITY OF BIDDEFORD, | ) ) ) ) ) ) ) | CIVIL NO. 2:16-cv-53-DBH |
| | ) | |
|               DEFENDANTS | ) | |

**DECISION AND ORDER ON PLAINTIFFS' MOTIONS
TO AMEND COMPLAINT AND ORDER FOR FURTHER BRIEFING
ON DEFENDANTS' MOTIONS TO DISMISS**

These cases claim that Biddeford police officers violated the plaintiffs' civil rights under 42 U.S.C.A. § 1983 (2015), as well as related state laws. Both lawsuits allege sexual assault (during different time periods many years ago) by Biddeford police officers when the plaintiffs were minors. They also assert that

the Biddeford Police Chief and the City of Biddeford failed to investigate, supervise, or train Biddeford police officers, thereby creating a widespread custom, habit, practice, and/or policy of permitting Biddeford police officers to sexually assault minors. Despite a serious statute of limitations issue, at this stage of the litigation before any discovery has occurred, the federal accrual rule may "save" the plaintiffs' claims against the Police Chief and the City because of when the plaintiffs say they first learned of Biddeford officials' involvement. Before I rule, however, I direct the parties to brief the significance of the First Circuit's decision in Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001), as explained further below.

## BACKGROUND

### I.  *Procedural History*

The procedural postures of these two cases is almost identical. The plaintiffs filed separate Complaints in the Maine Superior Court, each alleging three federal claims under section 1983—one against the police officer individually (for Lauzon, Officer Stephen Dodd; for Ouellette, Officer Norman Gaudette), one against Chief Roger Beaupre individually, and one against the Chief in his official capacity and the City of Biddeford ("Municipal Defendants")—and a state law tort claim of negligent supervision against the Municipal Defendants. Lauzon Compl. (ECF No. 3-1); Ouellette Compl. (ECF No. 1-2). The defendants removed the cases to this court and moved to dismiss the plaintiffs' Complaints, arguing that the plaintiffs' claims are barred by the statute of

limitations.[1]  Defs. Roger Beaupre and City of Biddeford's Mot. to Dismiss at 2 (ECF No. 19) ("Lauzon Defs.' Mot.); Defs. Gaudette, Roger Beaupre & City of Biddeford's Mot. to Dismiss at 3 (ECF No. 6) ("Ouellette Defs.' Mot.").

Lauzon and Ouellette then moved to amend their Complaints, adding Count V—a state law claim for sexual assault—and "clarifying" that they did not know about the Chief's or the City's role in violating their constitutional rights until 2014-2015, when media coverage and Biddeford Police Department investigations revealed municipal involvement in "turning a blind eye to sexual abuse of minors."  Lauzon's First Mot. to Am. Compl. at 5 (ECF No. 29); Ouellette's First Mot. to Am. Compl. at 5 (ECF No. 13).  A few days after moving to amend their Complaints, the plaintiffs filed their respective oppositions to the defendants' motions to dismiss.  In their oppositions, they stipulate to the *dismissal* of their Count I section 1983 claims against officers Dodd and Gaudette, but they ask the court to grant their pending motions to amend their Complaints so that they may hold Dodd and Gaudette accountable for the same conduct under state claims of sexual assault—Count V of the plaintiffs' Amended Complaints—which are not subject to a statute of limitations.  Lauzon's Opp'n to Defs.' Mot. to Dismiss at 5-6, 8-9 (ECF No. 33) ("Lauzon Opp'n"); Ouellette's Opp'n to Defs.' Mot. to Dismiss at 5-6, 8-9 (ECF No. 14) ("Ouellette Opp'n"); see

---

[1] In Lauzon's case, the defendant Stephen Dodd originally moved to dismiss the claims against him, arguing insufficient service of process, but he withdrew his motion, and he does not join the Municipal Defendants' motion.  See ECF No. 24.  Magistrate Judge Rich held a telephone conference in March 2016, to discuss the defendant Dodd's motion to enlarge time to answer or otherwise respond to the plaintiff's Complaint (ECF No. 31)  Given my ruling allowing the plaintiffs' motions to amend their Complaints, I direct the defendant Dodd to Magistrate Judge Rich's Order of March 4, 2016, granting Dodd's motion to enlarge time to file an answer or otherwise respond and ordering that Dodd's response to the plaintiff Lauzon's Amended Complaint shall be due within ten days of this Order.  See ECF No. 31.

3

14 M.R.S.A. § 752-C (2015). They also stipulate to the dismissal of their state law claims against the Municipal Defendants for negligent supervision (Count IV of their Complaints and the Amended Complaints). Lauzon Opp'n at 13; Ouellette Opp'n at 12. As to Counts II and III—the section 1983 claims against the Chief and the City—they argue that the federal rule for when a claim accrues defers the accrual date of these claims until 2014-2015, when an investigation first alerted Lauzon and Ouellette to the Municipal Defendants' role in violating their constitutional rights. As a result, they say, their lawsuits are well within Maine's six-year statute of limitations. Lauzon Opp'n at 6-10; Ouellette Opp'n at 6-10. Lauzon and Ouellette also assert that their claims should be tolled based on a theory of fraudulent concealment. Lauzon Opp'n at 10; Ouellette Opp'n at 10.

## II.   *Plaintiffs' Motions to Amend their Complaints*

The motions to amend the Complaints come at an early stage in the litigation, before the defendants have filed Answers, and before any discovery has taken place. Finding no prejudice to the defendants by virtue of allowing the amendments[2] and given the "liberal amendment policy" of Federal Rule of Civil Procedure 15(a), O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004), I **GRANT** the plaintiffs' motions to amend their Complaints. As a result, and accepting the plaintiffs' stipulations of dismissal as to Counts I and IV, the remaining claims before me for decision are Counts II and III—the section

---

[2] Dodd does not oppose the plaintiff Lauzon's motion to amend his complaint.

1983 claims against the Chief and the City—and Count V—the state law sexual assault claim against Dodd and Gaudette, respectively.

### III.   Facts for Purposes of the Motions to Dismiss

Because I am ruling on motions to dismiss, I construe the facts alleged in the Amended Complaints in the light most favorable to Lauzon and Ouellette. See Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94 (1st Cir. 2007). Although the two cases are strikingly similar, because they involve different police officers and different time periods, I separate them for clarity.  At this point, I do not know whether the facts as alleged are true, but I must treat them as if they are.

#### A.   *Lauzon v. Dodd, et al.*

Between 1998 and 1999, when Lauzon was thirteen or fourteen years old, an adult neighbor sexually abused him.  Lauzon Am. Compl. ¶ 10 (ECF No. 29-1).  The Biddeford Police Department investigated the incident, but at the time of the investigation, Lauzon was too embarrassed to admit what had happened.  Id. ¶¶ 11-12.  Weeks later, Officer Stephen Dodd contacted Lauzon, offered to help him with the neighbor's sexual abuse, and picked up Lauzon to discuss the incident.  Id. ¶¶ 13-16.  Dodd drove Lauzon to a secluded dirt road and proceeded to assault him sexually.  Id. ¶¶ 16-17.  Officer Dodd sexually assaulted Lauzon on at least one other occasion.  Id. ¶ 21.

Before Officer Dodd sexually assaulted Lauzon, Chief Roger Beaupre of the Biddeford Police Department had received information that Dodd and at least one other Biddeford police officer had sexually assaulted minors in Biddeford. Id. ¶ 23.  Despite this information, the Chief took no steps to protect Lauzon or

5

other minors in Biddeford from being sexually assaulted. Id. ¶ 25. Officer Dodd has stated (the Amended Complaint does not say to whom) that Chief Beaupre would not take action to terminate Officer Dodd because Dodd had photographic and/or video evidence of Chief Beaupre's alleged relationship with Officer Dodd and one other person that, if disclosed, would significantly compromise the Chief. Id.

Chief Beaupre engaged in a pattern of altering Biddeford Police Department internal affairs policies and establishing department policies to allow Officer Dodd to remain in his position during and after the period that sexual abuse allegations were made against Dodd and before Lauzon was sexually assaulted. Id. Chief Beaupre also failed to provide mandatory notification to Maine's Department of Human Services of Officer Dodd's sexual abuse, despite his obligation to do so. Id. Lauzon first discovered the Municipal Defendants' role sometime in 2014-2015, during "preliminary investigations into the claims made in [his] Complaint." Id. ¶ 26.

### B. *Ouellette v. Gaudette, et al.*

In the 1980s, when Ouellette was fifteen years old, Officer Norman Gaudette approached him while on duty in his police cruiser, told Ouellette that he looked like he needed some new clothes, and offered to find him a job cleaning at a local bank. Ouellette Am. Compl. ¶¶ 1, 10-13 (ECF No. 13-1). When Ouellette began working as a cleaner at the local bank, Officer Gaudette visited him and often wrestled with him. Id. ¶ 15. Gaudette also opened an account for Ouellette at a local clothing store in Biddeford so that Ouellette could purchase items that he could not otherwise afford. Id. ¶ 16. Approximately a

6

year after Gaudette first made contact with Ouellette, he took Ouellette to his camper in Naples.  Id. ¶ 17.  He then proceeded to get Ouellette drunk and sexually assaulted him.  Id. ¶¶ 18-19.  After that, Officer Gaudette sexually assaulted Ouellette on multiple occasions.  Id. ¶ 20.

Before Officer Gaudette sexually assaulted Ouellette, Chief Beaupre had received information that Gaudette and at least one other Biddeford police officer had sexually assaulted minors in Biddeford.  Id. ¶ 22.  Despite receiving this information, the Chief took no steps to protect Ouellette or other minors in Biddeford from being sexually assaulted.  Id. ¶ 24.

Chief Beaupre engaged in a pattern of altering Biddeford Police Department internal affairs policies and establishing department policies to allow Officer Gaudette to remain in his position during and after sexual abuse allegations were made against Gaudette—prior to the time that he sexually assaulted Ouellette.  Id.  Chief Beaupre also failed to provide mandatory notification to Maine's Department of Human Services of Officer Gaudette's sexual abuse, despite his obligation to do so.  Id.  Ouellette first discovered the Municipal Defendants' role sometime in 2014-2015, during "preliminary investigations into the claims made in [his] Complaint."  Id. ¶ 25.

## JURISDICTION

"'Almost by definition, a claim under § 1983 arises under federal law and will support federal-question jurisdiction [under § 1331] . . . .'"  Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto, 522 F.3d 1, 3 (1st Cir. 2008) (alteration in original) (quoting Local Union No. 12004, United Steelworkers v. Massachusetts, 377 F.3d 64, 75 (1st Cir. 2004)); see Penobscot

Nation v. Georgia–Pac. Corp., 254 F.3d 317, 322 (1st Cir. 2001) ("[T]he Supreme Court has often said that a *colorable* claim of a federal cause of action will confer subject matter jurisdiction even though the claim itself may fail as a matter of law on further examination."); see also 28 U.S.C.A. § 1331 (2010 & Supp. 2015). Moreover, the court may exercise supplemental jurisdiction over the plaintiffs' state law claims because they "are so related to claims in the action . . . that they form part of the same case and controversy . . . ." 28 U.S.C.A. § 1367(a) (2010 & Supp. 2015).

## ANALYSIS

I address first the federal claims and the statute of limitations.

The parties agree that section 1983 does not contain its own statute of limitations and, accordingly, that the Supreme Court has instructed courts to borrow the statute of limitations for personal injury claims from state law. Wilson v. Garcia, 471 U.S. 261, 276 (1985).[3] They also agree that, applying Wilson's directive, Maine's six-year statute of limitations for general civil claims applies to the plaintiffs' 1983 claims. See Small v. Inhabitants of City of Belfast, 796 F.2d 544, 546 (1st Cir. 1986); 14 M.R.S.A. § 752 (2015); see also McKenney v. Greene Acres Manor, 650 A.2d 699, 701 (Me. 1994) ("The First Circuit Court of Appeals has had occasion to apply the Wilson rule to a section 1983 claim arising in Maine, holding that the residual six-year statute of limitations set forth

---

[3] After Wilson was decided, Congress enacted a four-year statute of limitations for civil claims under federal statutes enacted after December 1, 1990, which the Supreme Court determined also applied to causes of action under federal statutes that were amended after December 1, 1990. 42 U.S.C.A. § 1658(a) (1991); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004). Section 1983 was enacted before that date, and the plaintiffs' claims do not arise out of any post-1990 amendment to section 1983. Therefore, the four-year statute of limitations in section 1658(a) does not apply.

8

in 14 M.R.S.A. § 752 (1980) is the appropriate one to be used for section 1983 cases in the state of Maine." (internal quotation marks omitted)).

The parties also agree that, unlike the *length* of the statute of limitations, which is governed by state law, "the accrual date of a [section] 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. 383, 388 (2007). They disagree, however, over *when* the plaintiffs' causes of action accrued so as to trigger the running of the six-year statute of limitations.

The standard rule for accrual is that the "limitations period commences when the plaintiff has a complete and present cause of action." Green v. Brennan, 136 S. Ct. 1769, 1776 (2016) (internal quotation marks omitted); see Wallace, 549 U.S. at 388. This generally means that a plaintiff's cause of action accrues when she is injured. Sanchez v. United States, 740 F.3d 47, 52 (1st Cir. 2014). There is a recognized exception, however, "in actions which fall under the so-called discovery rule." Attallah v. United States, 955 F.2d 776, 780 (1st Cir. 1992). This federal "discovery" rule is commonly framed as follows: "As a general proposition, a discovery rule 'allow[s] a claim to accrue when the litigant first knows *or with due diligence should know* facts that will form the basis for an action.'"[4] Randall v. Laconia, NH, 679 F.3d 1, 7 (1st Cir. 2012) (quoting Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 646 (2010)).

---

[4] The First Circuit has not always been completely clear in the language it uses to define the scope of the discovery rule. Compare Randall v. Laconia, NH, 679 F.3d 1, 7 (1st Cir. 2012) ("[A] discovery rule allows a claim to accrue when the litigant first knows *or with due diligence should know* facts that will form the basis for an *action*." (second emphasis added) (internal quotation marks omitted)), with Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003) ("[A] § 1983 claim accrues when a plaintiff knows or has reason to know of his *injury*." (emphasis added)). See also

The defendants argue that the plaintiffs' claims accrued when Lauzon and Ouellette were sexually abused—at the latest in 1999 for Lauzon, and in 1989 for Ouellette. See Lauzon Defs.' Mot. at 3; Ouellette Defs.' Mot. at 2. Thus, the defendants argue, even after tolling the statute of limitations until the plaintiffs reached the age of majority,[5] their 1983 claims would still be barred as of December 31, 2009, for Lauzon and, at the latest, in the 1990s for Ouellette. See Lauzon Defs.' Mot. at 3; Ouellette Defs.' Mot. at 1. But the plaintiffs contend that their injuries by Officers Dodd and Gaudette, and thus the accrual of their claims against those police officers individually, are separate and distinct from their claims against Chief Beaupre and the City of Biddeford. Lauzon Opp'n at 2; Ouellette Opp'n at 2. The plaintiffs argue that the Municipal Defendants' causative role in their injuries was their deliberate indifference to train and supervise the Biddeford police officers who sexually abused the plaintiffs, and that the triggering date to run the statute of limitations against the Municipal Defendants is when the plaintiffs became aware of, or should have been aware of (through the exercise of due diligence), the Municipal Defendants' deliberately indifferent actions. That, they assert, did not occur until 2014-2015. Lauzon

---

Attallah, 955 F.2d at 780 (1st Cir. 1992) ("Where the injury and its cause are not immediately apparent, accrual of the cause of action occurs at the time the injury is discovered or when a claimant in exercise of reasonable diligence could have discovered it." (citing United States v. Kubrick, 444 U.S. 111, 121-25 (1979))). "Injury" and the "basis for an action" against someone (or the causation of an injury) are not necessarily the same thing. Some of the confusion can be traced to Supreme Court language. Compare Rotella v. Wood, 528 U.S. 549, 555 (2000) ("[I]n applying the discovery accrual rule, we have been at pains to explain that discovery of the *injury*, not discovery of the other elements of a claim, is what starts the clock." (emphasis added)), with Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 646 (2010) (stating that the federal discovery rule "allow[s] a claim to accrue when the litigant first knows *or with due diligence should know* facts that will form the basis for an *action*" (second emphasis added)).

[5] Although accrual of a claim under section 1983 is governed by federal law, principles for tolling the limitations period are borrowed from state law. Bd. of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478, 483-84 (1980); see 14 M.R.S.A. § 853 (2015).

10

Opp'n at 5; Ouellette Opp'n at 5.  In response, the defendants argue that the sexual abuse itself put the plaintiffs on "inquiry notice that a possible claim could exist against [the police officers'] employer."  Lauzon Defs.' Reply at 5 (internal quotation marks omitted).  They argue that the basis for the plaintiffs' claims against the Municipal Defendants was not "inherently unknowable"; rather, it was "capable of detection through the exercise of reasonable diligence."  Ouellette Defs.' Reply at 2 (citing Sanchez, 740 F.3d at 52); Lauzon Defs.' Reply at 6.

The First Circuit has stated that "[o]utside the medical malpractice context [ ] the identity of the individual(s) responsible for an injury may be less evident, and a plaintiff may have less reason to suspect governmental involvement."  Skwira v. United States, 344 F.3d 64, 77 (1st Cir. 2003).  Thus, the First Circuit has held that a claim accrues when "the plaintiff knows, or in the exercise of reasonable diligence should know, (1) of her injury and (2) sufficient facts to permit a reasonable person to believe that there is a causal connection between the government and her injury."  Id. at 78; Callahan v. United States, 426 F.3d 444, 451 (1st Cir. 2005) ("For claims other than medical malpractice, we apply a more forgiving rule because the identity of the individual(s) responsible for an injury may be less evident." (internal quotation marks omitted)).

I follow these cases and the rationale and holding of Armstrong v. Lamy, 938 F. Supp. 1018 (D. Mass. 1996), a very similar case to this one that is consistent with analogous First Circuit case law.  I cannot determine on the pleadings when the plaintiffs knew or should have known of the Municipal Defendants' role in their abuse.  I conclude, therefore, that the date the plaintiffs' claims accrued against the Municipal Defendants may be different from the date

11

the plaintiffs' claims accrued against Officers Dodd and Gaudette. See id. at 1032-33 ("[T]he evidence . . . does not indicate the date on which the plaintiff knew, or should have known, that the alleged acts and omissions on the part of the Municipal Defendants were a proximate cause of his injury, even assuming that he knew he had been injured by [the abuser]."). At this stage in the litigation, there has been no factual development to determine when Lauzon and Ouellette knew or should have known, through the exercise of due diligence, that the Municipal Defendants were a proximate cause of their injuries, even though they knew that Dodd and Gaudette had injured them. See id. at 1033; Doe v. Bd. of Educ. of Hononegah Cmty. High Sch. Dist. No. 207, 833 F. Supp. 1366, 1376 (N.D. Ill. 1993) (denying motion to dismiss by school administrators on statute of limitations grounds because "it may have been reasonable for plaintiff to believe that the sexual abuse was caused by nothing more than the teacher's improper and self-serving motivation without her having any reason to suspect that the school board or its administrators had been responsible in any way for the teacher's conduct. . . . [T]he notice must not be of harm but of governmental harm."); Sowers v. Bradford Area Sch. Dist., 694 F. Supp. 125, 139 (W.D. Pa. 1988), judgment vacated on different grounds, sub nom. Smith v. Sowers, 490 U.S. 1002 (1989) (denying defendants' motion to dismiss in a 1983 school sexual abuse case because further factual development was necessary to determine whether the plaintiff knew or should have known that the school district and administrators had fostered "an environment of reckless indifference toward sexual abuse of female students by teachers" in the school district); accord T.R. v. Boy Scouts of Am., 181 P.3d 758, 764-65 (Or. 2008) (holding that although a

plaintiff has a duty to investigate, "[t]he party who asserts the statute of limitations as a defense must prove that an investigation would have disclosed [the necessary] facts" and that "[a]pplication of the discovery accrual rule is a factual issue for the jury unless the only conclusion a reasonable jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter.").[6]

Thus, on the motions to dismiss without development of a factual record, I am not prepared to say that the statute of limitations has run on the plaintiffs' federal claims against the Municipal Defendants.[7]

There is one additional issue that requires attention, however. One of the parties cited the First Circuit case of Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001), although not on the issue that concerns me as I describe below.

---

[6] I decline the defendants' invitation to follow Duncan v. Oregon, No. CIV 05-1747-KI, 2007 WL 789433 (D. Or. Mar. 14, 2007), which held that "the sexual abuse is the injury which is the basis for both the cause of action against [the abusers] and the cause of action against State Defendants." Id. at *6. I find Armstrong v. Lamy, 938 F. Supp. 1018 (D. Mass. 1996), more persuasive. Furthermore, one of the cases that the Duncan court found "very instructive" to its holding, Duncan, 2007 WL 789433, at *5 (namely, T.R. v. Boy Scouts of Am., 133 P.3d 353 (Or. Ct. App. 2006)), was subsequently reversed and remanded because the Oregon Supreme Court disavowed the application of the discovery rule that the defendants here urge me to adopt, see T.R. v. Boy Scouts of Am., 181 P.3d 758, 764-66 (Or. 2008).

[7] I can and do, however, rule on the plaintiffs' argument that fraudulent concealment tolls the statute of limitations. The plaintiffs have made no allegations in their Amended Complaints to support their arguments of fraudulent concealment. They are required to plead that assertion with specificity under Fed. R. Civ. P. 9(b), see 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297 (3d ed. 2004 & Supp. 2016); Abdallah v. Bain Capital LLC, 880 F. Supp. 2d 190, 195-96 (D. Mass. 2012), and they have failed to do so. I recognize that the statute of limitations is an affirmative defense that can be waived and that the plaintiffs' original Complaints therefore may not have addressed the issue. But the defendants moved to dismiss the original Complaints under the statute of limitations and the plaintiffs then moved to amend their Complaints, and thus they had full opportunity to address the fraudulent concealment tolling. They did not do so. They did allege concealment, see Lauzon Am. Compl. at ¶ 25; Ouellette Am. Compl. at ¶ 24, but it was concealment *before* the alleged sexual assaults and addressed how that allowed the assaults. In no way did it assert that *after* the assaults, the Municipal Defendants fraudulently concealed their role. Thus, fraudulent concealment cannot toll the statute of limitations, regardless of when the plaintiffs' 1983 claims accrued.

In Nieves, the plaintiff arrestees brought a ten-count complaint against police officers, the chief of police, and the town of Ayer alleging violations of their civil rights. Id. at 49-50. There were five counts of alleged violations under section 1983—two counts against the individual police officers and three counts against the police chief and the town. Id. at 50. After discovery, the defendants moved for summary judgment. Id. at 49. The district court first addressed the 1983 claims against the individual police officers and concluded that those claims were time-barred. Id.; Nieves v. McSweeney, 73 F. Supp. 2d 98, 102 (D. Mass. 1999). The district court ultimately granted summary judgment to the defendants on all the federal claims, and the plaintiff arrestees appealed. Nieves, 241 F.3d at 48; Nieves, 73 F. Supp. 2d at 105-06.

On appeal, the First Circuit "grapple[d] with" the district court's conclusion as to the 1983 claims against the officers and only briefly explained why the 1983 claims against the chief of police and the town were of no concern. Id. at 50. The First Circuit's reasoning, possibly fatal to Lauzon's and Ouellette's claims here, was that if the 1983 claims against the individual police officers were time-barred (the claims alleging the underlying constitutional violations upon which the supervisory and municipal liability claims against the chief of police and the town were based), then the supervisory and municipal liability claims against the chief and town "also *must fail.*" Id. at 50 (emphasis added).[8]

---

[8] The First Circuit may be alone in its view that the viability of a 1983 claim against the individual municipal officer is a prerequisite to having a viable claim against the supervisor or the municipality. See, e.g., Rutigliano v. City of New York, 326 F. App'x 5, 9 (2d Cir. 2009); Gray v. City of Detroit, 399 F.3d 612, 616-17 (6th Cir. 2005); Fairley v. Luman, 281 F.3d 913, 917-18 (9th Cir. 2002), cert. denied, 537 U.S. 1044 (2002); Speer v. City of Wynne, 276 F.3d 980, 985-86 (8th Cir. 2002); Garcia v. Salt Lake Cty., 768 F.2d 303, 310 (10th Cir. 1985); see also Martin

The First Circuit upheld the district court's conclusion that the 1983 claims against the officers were time-barred and as a result affirmed the entry of summary judgment for the chief and town without further analysis of the basis for liability of the municipal defendants. Id. at 53, 57.

I invite the parties' argument on the significance of this First Circuit precedent. The plaintiffs have stipulated to the dismissal of their Count I section 1983 claims against Officers Dodd and Gaudette—the Count alleging the underlying constitutional violations upon which the supervisory and municipal liability claims are based—because, as the plaintiffs readily admit, the 1983 claims against Dodd and Gaudette are time-barred. Lauzon Opp'n at 5, 8; Ouellette Opp'n at 5, 8. Under Nieves, must the plaintiffs' 1983 claims against the Chief and the City also fail as a result?[9]

## CONCLUSION

The parties shall brief the significance of Nieves to the plaintiffs' claims by July 28, 2016. They shall file any replies by August 11, 2016. The defendant Stephen Dodd shall answer or otherwise respond to the plaintiff Lauzon's Amended Complaint within ten days of entry of this Order.

SO ORDERED.

DATED THIS 14TH DAY OF JULY, 2016

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
UNITED STATES DISTRICT JUDGE

---

A. Schwartz, Section 1983 Litig. Claims & Defenses § 7.13 (2016) ("The establishment of a municipal officer's individual liability is not a prerequisite to the imposition of municipal entity liability." (citing cases)). Nevertheless, I must faithfully apply First Circuit law.

[9] Until I rule on the applicability of the First Circuit's decision in Nieves, I defer ruling on the motion to dismiss as it applies to the plaintiffs' state law sexual assault claims.