UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MATTHEW LAUZON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     2:16-cv-00051-LEW |
| | ) |
| STEPHEN DODD, | ) |
| ROGER BEAUPRE, and | ) |
| CITY OF BIDDEFORD | ) |
| | ) |
| Defendants | ) |

**ORDER ON DEFENDANTS ROGER BEAUPRE AND CITY OF BIDDEFORD'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Matthew Lauzon alleges Defendant Stephen Dodd sexually assaulted him when Plaintiff was a minor and Dodd was a police officer for the City of Biddeford. Plaintiff also alleges that Roger Beaupre, the Chief of Police of the Biddeford Police Department, knew or should have known of Officer Dodd's misconduct and failed to take appropriate action to prevent the abuse. Plaintiff filed this civil action against Mr. Dodd, Mr. Beaupre, and the City of Biddeford, asserting violations of Plaintiff's civil rights under 42 U.S.C. § 1983 and related state laws.[1] Defendants Roger Beaupre and City of Biddeford

---

[1] On July 14, 2016, this Court granted Plaintiff's motion to amend his complaint and accepted his stipulation of dismissal of two counts. Order on Mot. Amend. 4-5 (ECF No. 41, #218-19). On July 21, 2016, Plaintiff filed his Amended Complaint, which included five counts: Counts I – III – the section 1983 claims against Defendants Dodd, Chief Beaupre, and the City of Biddeford, respectively – and Counts IV and V – the state law negligent supervision against Defendants Beaupre and the City of Biddeford and the sexual assault claim against Defendant Dodd, respectively.

now move for summary judgment on three discrete issues: (1) whether Plaintiff's action is barred by the statute of limitations; (2) whether the actions of Defendant Dodd were done under color of law; and (3) whether Defendant Beaupre is entitled to qualified immunity.

For the following reasons, Defendants Roger Beaupre and City of Biddeford's Motion for Summary Judgment (ECF No. 138) is **GRANTED**.

## LOCAL RULE 56 REQUIREMENTS

When parties file a motion for summary judgment in the District of Maine, they must "present the factual record for summary judgment in accordance with Local Rule 56." *Winslow v. Cty. of Aroostook*, No. 1:11-CV-162-GZS, 2013 WL 594762, at *1 (D. Me. Feb. 15, 2013), *aff'd sub nom. Winslow v. Aroostook Cty.,* 736 F.3d 23 (1st Cir. 2013). The District's Local Rules expressly require parties to submit a "separate, *short, and concise* statement of material facts." *See* M. R. Civ. P. 56(h) (emphasis added).

However, in this case, I was faced with, as the Maine Supreme Judicial Court so aptly put it, "a summary judgment process that was, by definition, not 'summary.'" *First Tracks Investments, LLC v. Murray, Plumb & Murray*, 2015 ME 104, ¶ 2, 121 A.3d 1279. In direct contradiction to our conversation during the 56(h) conference at which I reminded the parties I had every intention of requiring the parties to "fastidiously . . . comply with a short and concise statement,"[2] Defendants' summary judgment motion was submitted

---

[2] Throughout the 56(h) conference held before me on December 20, 2018, the parties enthusiastically signaled their understanding of the spirit and letter of the Rule, vowing their labors toward agreeing upon a set of stipulated facts and a stipulated record. *See* Rule 56(h) Conference Tr. 8:21-23 (ECF No. 133, #444) ("[A]t the end of the day can I say we're going to – I really think we're going to have a fully locked and stipulated record for you."); *id.* at 6:12-18; 9:5-7; 36:12-15. However, on February 12, 2019, the parties informed the Court that they were unable to agree upon a stipulated record.

along with 668 statements of "material" facts to which Plaintiff responded and then submitted an additional 93 statements of "material" facts in opposition. Rule 56(h) Conference Tr. 12: 23-24 (ECF No. 133, #448). Of the 668 facts submitted along with their motion, Defendants Beaupre and City of Biddeford identified 558 of them as the "facts . . . necessary to the resolution of the partial motion for summary judgment issue." Def.'s Listing, 1-2 (ECF No. 139, #513-14). Despite this anemic effort at trimming the fat, disappointingly few of the purported facts submitted by both parties were material to the three narrow legal questions advanced in the motion.

As acknowledged by the First Circuit when applying a similar standard under Puerto Rico's local rules, "[t]here is no mechanical rule rendering a long statement insufficiently 'short' and 'concise'; after all, a case could have a great many material contested facts." *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 81 (1st Cir. 2005). However, when the parties "[b]ury[] the district court in a mass of supposedly material contested facts," they fail to "even arguably comply with the spirit or letter of the rule" and create "the very morass from which the rule aims to protect the district judge." *Id.* Here, the unnecessary length and contested nature of the parties' constellation of facts, more suited to an unabridged anthology than to a Rule 56 filing, has "needlessly complicate[d] the summary judgment process" and on that ground alone, it would be within my ambit to deny summary judgment. *Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶¶ 28, 29, 864 A.2d 169 ("If a party submits an unnecessarily long, repetitive, or otherwise convoluted statement of material facts that fails to achieve the Rule's requirement of a 'separate, short, and concise' statement, the court has the discretion to disregard the statement and deny the motion for

3

summary judgment solely on that basis."). Nevertheless, as this motion holds potential to significantly limit the future expenditure of judicial resources and is capable of resolution on narrow grounds, I have labored through the Rule 56 statements and the merits of the parties' arguments notwithstanding their constitutional inability to steer within the navigational beacons of the rulebook.

## SUMMARY JUDGMENT FACTS

The summary judgment facts are drawn from the parties' extensive statements of material facts. The Court will adopt a statement of fact if it is admitted by the opposing party and is material to the dispute. If a statement is denied or qualified by the opposing party, or if an evidentiary objection is raised concerning the record evidence cited in support of a statement, the Court will review those portions of the summary judgment record cited by the parties, and will accept, for summary judgment purposes, the factual assertion that is most favorable to the party opposing the entry of summary judgment, provided that the record material cited in support of the assertion is of evidentiary quality and is capable of supporting the party's assertion, either directly or through reasonable inference. D. Me. Loc. R. 56; *Boudreau v. Lussier*, 901 F.3d 65, 69 (1st Cir. 2018).

Plaintiff alleges that he was sexually abused by an adult neighbor when he was a young teenager.[3] Defs. Statement of Material Facts ("DSMF") ¶ 36 (ECF No. 161-2, #1800); Amend. Compl. ¶ 10. At the time, Plaintiff did not report this sexual abuse to his family or police. DSMF ¶¶ 85; 87. However, after the neighbor called the Plaintiff's

---

[3] The record is unclear when this event occurred. *See* DSMF ¶ 36 (indicating Plaintiff was thirteen or fourteen at the time); DSMF ¶ 42 (indicating Plaintiff was fifteen at the time).

household to speak to Plaintiff, Plaintiff's family filed a complaint with the Biddeford Police Department ("BPD") in which they reported that the neighbor was harassing Plaintiff. DSMF ¶ 66, 67, 76, 84.

On July 27, 2000, an officer and two detectives from BPD visited the Plaintiff's home to investigate. DSMF ¶ 66, 82, 93, 110. Plaintiff did not reveal his sexual encounter with the neighbor to the responding police officers. DSMF ¶¶ 87, 111, 114. In accordance with BPD policies, the responding officers filed a report concerning Plaintiff's harassment complaint and this report was then submitted to the officers' supervisor and Approving Officer, Defendant Stephen Dodd.[4] Pl.'s Statement of Material Facts ("PSMF") ¶¶ 4-7 (ECF No. 144, #747-48).

Sometime after this report,[5] Plaintiff made contact with Defendant Dodd on an instant messaging service. DSMF ¶¶ 21; 125. Defendant Dodd used a private computer in his home to contact Plaintiff.[6] DSMF ¶¶ 153, 141. During this initial conversation, Plaintiff asked whether Dodd was a police officer and Dodd acknowledged he was an officer with BPD. DSMF ¶ 145; PSMF ¶ 11. Plaintiff later testified that Dodd indicated

---

[4] Defendant Dodd was an officer with BPD from 1978 until 2003. DSMF ¶ 21.

[5] The record is unclear regarding how much time elapsed between Plaintiff's harassment complaint and his first contact with Dodd. However, for purposes of this motion, I accept Plaintiff's testimony that he spoke with Dodd a few "weeks or months" following contact with his neighbor. DSMF ¶¶ 135-39. Additionally, the record is unclear regarding Plaintiff's age at the time of his encounters with Defendant Dodd. Plaintiff has indicated at one time he was as young as thirteen years old, see DSMF ¶ 128, and at other times as old as fifteen, see DSMF ¶ 131. In contrast, Defendant Dodd testified that his initial interaction with Plaintiff occurred in February 2002 – at which point Plaintiff was sixteen years old. DSMF ¶ 163; Dodd Dep. 71 (ECF No. 152-28, #1035).

[6] The parties agree Dodd "never used equipment owned by the City of Biddeford or the BPD to contact any person to engage in a sexual act." DSMF ¶ 153.

5

he knew "something happened to [Plaintiff]" (presumably relating to the abuse Plaintiff suffered at the hands of his neighbor) and made an offer to help. DSMF ¶¶ 147; 155. Plaintiff and Dodd arranged to meet in person. DSMF ¶ 154. Plaintiff later testified he believed he was going to meet with a police officer or, in his words, "someone you could trust anytime." DSMF ¶ 146.

At the time of the meeting, Dodd was dressed in plain clothes, did not display his BPD badge, and was driving his personal vehicle. DSMF ¶¶ 166; 172; 224. The record is unclear whether Dodd had a gun; however, the parties agree Dodd did not threaten Plaintiff with a gun during this encounter. DSMF ¶¶ 181-83, 191-93. Dodd initially suggested he and Plaintiff return to Dodd's home. DSMF ¶ 178. However, Plaintiff was uncomfortable with that suggestion and so Dodd drove approximately 15 minutes and stopped on a dirt road. DSMF ¶ 139; Lauzon Dep. 276:24, 277:11-12 (ECF No. 154-11, #1340). Plaintiff and Dodd engaged in sexual activity in Dodd's vehicle. DSMF ¶ 196. Sometime after this initial encounter, Plaintiff and Dodd had one additional sexual encounter.[7] DSMF ¶¶ 211; 212.

Defendant Dodd's activities – particularly regarding his alleged interactions with minors – had been the subject of investigations both before and after his encounters with Plaintiff. For example, in 1989, Maine State Police investigated allegations of sexual abuse asserted by Dodd's foster child, Larry Carey. DSMF ¶ 24. The York County District Attorney's office did not prosecute the case. DSMF ¶ 549. However, because of the

---

[7] Plaintiff testifies he and Dodd arranged a third meeting to engage in sexual activity in exchange for $100, but Plaintiff "panicked and left" before entering Dodd's home. DSMF ¶ 228-30, 234.

6

allegations, Dodd was removed from the foster parent list. DSMF ¶ 531. In approximately 2001, unbeknownst to the Biddeford Police Department or Maine law enforcement, Dodd was the subject of an FBI investigation regarding his social media use. DSMF ¶¶ 295-96, 298. No action was taken against Dodd as a result of the FBI investigation. DSMF ¶ 297. Then, in 2002, a former neighbor of Dodd's filed a complaint with the York County District Attorney's office and the Maine Office of the Attorney General began an investigation into allegations of sexual abuse of minors by Dodd. DSMF ¶¶ 26, 261, 265. Although this investigation did not uncover information relating to Dodd and Plaintiff's sexual contact, it did uncover other allegations of sexual misconduct by Dodd. DSMF ¶¶ 267-269. Defendant Beaupre, the chief of BPD, was aware of the 2002 investigation and met with investigators. DSMF ¶¶ 13, 266. Following the investigation, the Maine Office of Attorney General determined that no criminal action could be filed against Dodd. DSMF ¶ 318.

On October 31, 2002, Chief Beaupre suspended Dodd from duty, banned him from entering the BPD building, and required Dodd to return his service revolver, police radio, building keys, departmental badges, and identification. DSMF ¶ 317. Defendant Dodd remained on a leave of absence until he formally surrendered his license to be a law enforcement officer and resigned from the BPD on July 18, 2003. DSMF ¶ 27.

Plaintiff first communicated with BPD or Chief Beaupre regarding his abuse by Dodd on October 31, 2014. DSMF ¶¶ 352, 365. During the intervening years, Plaintiff "kept a low profile" when it came to any investigation of his potential claims against Dodd and made the conscious decision to wait to confront Dodd until Plaintiff turned thirty years

7

old. DSMF ¶¶ 355, 360. Plaintiff testified that from approximately 2005 until 2010, he focused on "getting to the place where [he] could try to deal [with Dodd's abuse]." Dep. of Matthew Lauzon, 352:19-22 (ECF No. 153-25, #1238). Plaintiff did, however, occasionally search the internet for information regarding Dodd and "to make sure that he hadn't molested another kid and wasn't in the news." *Id.* at 351:23-24.

When reporting his sexual abuse in 2014, Plaintiff first contacted the Maine State Police and was referred to the BPD and Sergeant Philip Greenwood. DSMF ¶ 389. Around this same time, Plaintiff communicated with other individuals who claimed Dodd had sexually abused them and, furthermore, that BPD had been aware of Dodd's actions but covered them up. DSMF ¶¶ 415, 428. One such individual was Jonathan Clark, a high school acquaintance with whom Plaintiff had previously had a sexual liaison. DSMF ¶ 247, 250. Clark asserted, *inter alia*, that Dodd had abused him in approximately 1998 and that in 2006, Dodd revealed to him that BPD and Chief Beaupre were aware of this abuse but allowed Dodd to continue working because Dodd had blackmailed Chief Beaupre. DSMF ¶ 301; PSMF ¶¶ 27, 48; Dep. of Jonathan Clark 58:2 (ECF No. 152-17, #942). In 2006, Clark sent emails to then Governor John Baldacci alleging that Chief Beaupre was involved in a coverup of Dodd's sexual abuse. DSMF ¶ 416. In 2014-2015, Clark shared some of the information contained in these emails with Plaintiff. DSMF ¶ 428.

On October 29, 2015, Plaintiff filed the instant suit in the York County Superior Court. Compl. (ECF No. 3-1). On February 2, 2016, Defendants removed the case to this court. Notice of Removal (ECF No. 1).

## DISCUSSION

Defendants Roger Beaupre and the City of Biddeford seek summary judgment on three distinct issues. Mot. Summ. J. 1 (ECF No. 138, #482). First, Defendants assert that Plaintiff's complaint was filed outside the applicable statute of limitations and, furthermore, that Plaintiff is not entitled to an extended accrual period. *Id.* at 7-11. Along a similar vein, Defendants also assert that because Plaintiff's civil rights action against Defendant Dodd is time-barred, this court must dismiss the corresponding civil rights claims asserted against his supervisor and employer. *Id.* at 11. Second, Defendants assert that Defendant Dodd was not acting "under color of law" when he allegedly sexually abused Plaintiff; therefore, Defendants argue, if Plaintiff is unable to establish liability against Dodd, then the supervisory and municipal liability claims against the chief and town also fail as a matter of law. *Id.* at 15-21. Finally, Defendants assert Defendant Beaupre (in his individual capacity) did not violate Plaintiff's clearly-established constitutional rights and is entitled to qualified immunity. *Id.* at 25-29.

In response, Plaintiff asserts that he did not have actual or constructive notice of his claim against the City of Biddeford or Defendant Beaupre until he reported his abuse and retained counsel in 2014; therefore, he asserts, his 2016 filing was timely. Pl.'s Resp. 11, 13 (ECF No. 143, #590, 592). Second, Plaintiff asserts that Defendant Dodd's access to Plaintiff was facilitated by his express use of state authority and, in turn, that Defendant Dodd was acting under color of law when he sexually abused Plaintiff. *Id.* at 18. Finally, Plaintiff asserts Defendant Beaupre is individually liable for the alleged violation of Plaintiff's constitutional rights on a theory of supervisory liability and furthermore that he

9

is barred from relying on the doctrine of qualified immunity. *Id.* at 25, 27.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As cautioned by the Supreme Court, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is one that has the potential to determine the outcome of the litigation. *Id.* at 248; *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). To raise a genuine issue of material fact, Plaintiff, as the party opposing the summary judgment motion, must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in his favor. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case."). Because Plaintiff's claims against Chief Beaupre and the City of Biddeford are time barred, I address only the question of the applicable statute of limitations period and relevant tolling provisions.

Plaintiffs who are deprived by governmental actors acting under color of law of "any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, may seek redress for violation of those rights in a private action. *Cruz–Erazo v. Rivera–Montanez*, 212 F.3d 617, 621 (1st Cir. 2000). "In bringing suit, however, plaintiffs must act within the prescribed statute of limitations; otherwise, the defendant may use the

untimely filing as an affirmative defense which, if validated, precludes the court from granting the requested relief." *Cao v. Puerto Rico*, 525 F.3d 112, 115 (1st Cir. 2008).

In Maine, cases brought under section 1983 are subject to a six-year statute of limitations pursuant to 14 M.R.S.A. § 752. *Small v. Inhabitants of City of Belfast*, 796 F.2d 544, 546 (1st Cir. 1986) ("[T]he Maine six-year statute of limitations, 14 M.R.S.A. § 752, is the appropriate one to be used for section 1983 cases in the state of Maine."); *see also Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991) ("The Supreme Court directs federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 to borrow the statute of limitations applicable to personal injury actions under the law of the forum state.").

Although federal courts apply the statute of limitations period that is prescribed by state law, federal law governs the accrual date of an action under Section 1983. *Wallace v. Kato*, 549 U.S. 383, 388 (2007). For such actions, the accrual date or the point in time at which the statute of limitations begins to run is "when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 353 (1st Cir. 1992). However, this accrual date may be impacted by the specific facts presented in a case. For example, when a plaintiff alleges harms inflicted before he or she reached the age of majority, federal courts will borrow from state law tolling principles, *see Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483-84 (1980), and thus, in Maine, an action will accrue only after the plaintiff reaches the age of majority pursuant to 14 M.R.S.A. § 853. Additionally, under the federal "discovery rule," an action accrues only "when the plaintiff discovers, or in the exercise of reasonable

diligence should have discovered, the factual basis for the cause of action." [8] *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (citing *United States v. Kubrick*, 444 U.S. 111, 121-24 (1979)); *see also Randall v. Laconia, NH*, 679 F.3d 1, 7 (1st Cir. 2012) (same). However, it is important to note that the federal discovery rule is only applicable if the foundational facts underlying a plaintiff's claim were "'inherently unknowable' at the time of the injury." *Attallah v. United States*, 955 F.2d 776, 780 (1st Cir. 1992) (quoting *Levin v. Berley*, 728 F.2d 551, 553 (1st Cir. 1984)). This is an "objective standard" and in order to "delay commencement of the running of the statute of limitations, 'the factual basis for the cause of action must have been inherently unknowable [that is, not capable of detection through the exercise of reasonable diligence] at the time of injury.'" *Sanchez v. United States*, 740 F.3d 47, 52 (1st Cir. 2014) (quoting *Gonzalez*, 284 F.3d at 288-89).

---

[8] As previously noted by this court:

> The First Circuit has not always been completely clear in the language it uses to define the scope of the discovery rule. *Compare Randall v. Laconia, NH*, 679 F.3d 1, 7 (1st Cir. 2012) ("[A] discovery rule allows a claim to accrue when the litigant first knows *or with due diligence should know* facts that will form the basis for an *action*." (second emphasis added) (internal quotation marks omitted)), *with Poy v. Boutselis*, 352 F.3d 479, 483 (1st Cir. 2003) ("[A] § 1983 claim accrues when a plaintiff knows or has reason to know of his *injury*." (emphasis added)). *See also Attallah*, 955 F.2d at 780 (1st Cir. 1992) ("Where the injury and its cause are not immediately apparent, accrual of the cause of action occurs at the time the injury is discovered or when a claimant in exercise of reasonable diligence could have discovered it." (*citing United States v. Kubrick*, 444 U.S. 111, 121-25 (1979))). "Injury" and the "basis for an action" against someone (or the causation of an injury) are not necessarily the same thing. Some of the confusion can be traced to Supreme Court language. *Compare Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[I]n applying the discovery accrual rule, we have been at pains to explain that discovery of the *injury*, not discovery of the other elements of a claim, is what starts the clock." (emphasis added)), *with Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 646 (2010) (stating that the federal discovery rule "allow[s] a claim to accrue when the litigant first knows *or with due diligence should know* facts that will form the basis for an *action*" (second emphasis added)).

Decision & Order, 9-10 (ECF No. 41, #224-25).

The parties do not contest that Plaintiff reached the age of majority in January 2003 and that, in the absence of additional tolling provisions, the statute of limitations would have expired six years later. Mot. Summ J., 6. However, the parties stridently dispute the applicability of the federal discovery rule and, more specifically, whether the material facts indicate Plaintiff, in the exercise of reasonable diligence, could have or should have known that Defendants Beaupre and the City of Biddeford may be liable for their role (whether through action or inaction) in Defendant Dodd's abuse. Mot. Summ. J., 7-11; Pl.'s Resp. 8-17.

On this point, Plaintiff admits he knew he was harmed by Defendant Dodd and that Defendant Dodd was a Biddeford Police Department officer;[9] however, Plaintiff asserts that his choice to not engage in an investigation against the City or Chief Beaupre was reasonable because he "had no reason to believe prior to 2014-15 that Chief Beaupre knew or had reason to know of [Defendant] Dodd's sexual abuse of juveniles" and furthermore that prior to 2015, there was "no information generally available . . . that Lauzon was aware of or able to discover suggesting Chief Beaupre knew of [Defendant] Dodd's sexual abuse of minors and did nothing about it and/or covered it up." Pl.'s Resp. 9-10. In contrast, Defendants assert that Plaintiff possessed "'knowledge of the facts sufficient to put him on inquiry notice' that a possible claim could exist against Defendant Dodd's employer." Mot. Summ. J. at 8 (quoting *Marrapese v. Rhode Island*, 749 F.2d 934, 937 (1st Cir. 1984)). Additionally, Defendants argue that the information Plaintiff discovered in 2014-2015 was

---

[9] Plaintiff argues Defendant Dodd was acting under "color of law," or, in other words, that he "abuse[d] the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 50 (1988).

not "inherently unknowable" or incapable of detection and therefore the federal discovery rule is inapplicable to the facts of the case. *Id.* at 10.

Within the context of a claim brought pursuant to the Federal Tort Claims Act, the First Circuit has acknowledged that when "the identity of the individual(s) responsible for an injury [is] less evident" and the circumstances of their injury does not lead a plaintiff "to suspect governmental involvement," courts may be "slightly more forgiving" through application of the federal discovery rule. *Skwira v. United States*, 344 F.3d 64, 77 (1st Cir. 2003). However, this more lenient standard is not an apologetic for a plaintiff who buries his head in the sand. *Id.* Instead, the First Circuit emphasized that there is "a reasonable diligence component" which requires a plaintiff to "undertake a reasonably diligent investigation into the cause of injury." *Id.* In other words, "[o]nce a plaintiff knows of the injury and its probable cause, he/she bears the responsibility of inquiring among the medical and legal communities about whether he/she was wronged and should take legal action." *Gonzalez*, 284 F.3d at 289. If a plaintiff fails to engage in investigation, the First Circuit cautions: the "law will impute to her an awareness of any knowledge that she would have uncovered if she had undertaken that inquiry." *Skwira*, 344 F.3d at 77.

The case at hand is not a claim brought pursuant to the Federal Tort Claims Act; however, the First Circuit's reasoning is still instructive. As alleged, Plaintiff suffered a tremendous wrong at the hands of Defendant Dodd – a man who Plaintiff's own allegations establish was closely associated with Defendant Beaupre, the BPD, and the City of Biddeford. In fact, this connection was so fundamental that in response to this motion, Plaintiff argues Defendant Dodd was acting under color of law at the time of his assault.

14

As Plaintiff termed it: "It is hard to imagine more definitive ties between Sgt. Dodd's actions – starting right at his initial contact all the way through his sexual abuse of Lauzon – that could be any more connected to BPD." Pl.'s Resp., 5. Although Plaintiff did not know the factual contours of his potential case against Defendants Beaupre and the City of Biddeford at the time of his assault, he was aware that he had suffered terrible harms by a man closely affiliated with both and could have made inquiries and likely discovered information on which to ground his claims, such as the 1989 investigation into allegations of sexual assault against Dodd or the 2002-2003 investigation conducted by the Maine Attorney General in which five other individuals asserted claims of sexual abuse at the hands of Dodd. Certainly, upon reaching the age of majority, he could have reached out to the community at large, as he did in 2014, and learned of the suspicions and experiences of others that buttress his current claim – particularly the allegations of Jonathan Clark, with whom Plaintiff had been closely acquainted and who claimed he had been sexually abused by Dodd in 1998 and had even written a letter to the Governor of Maine in 2006 detailing his suspicions that the BPD and Chief Beaupre were aware of the abuse, but covered it up. In short, Plaintiff could have pursued the course he took in 2014.

Instead, Plaintiff made a conscious choice to not pursue or even discuss his potential claim until he reached age thirty. DSMF ¶ 355. This choice – emotionally justifiable as it may be – does not somehow absolve him of his duty to perform even the most basic of investigations into possible avenues of legal recourse. The duty to investigate is "not a negligible one." *Marrapese*, 749 F.2d at 943-44 (reaffirming that a plaintiff cannot "simply sit back, without further investigation, and permit the statutory period to lapse."); *see also*

15

*A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 141-42 (2nd Cir. 2011) ("An accrual date that turns on when a plaintiff (or his lawyers) finally decides to take action, rather than when the plaintiff was sufficiently alerted to the appropriateness of seeking legal advice, would render the limitations period meaningless."). Plaintiff was required to "actively pursu[e] his bare suspicions and then fil[e] a claim when there [was] reasonable prospects of liability." *Skwira*, 344 F.3d at 84. Plaintiff did not do so.

The information Plaintiff could have uncovered through investigation may not have been sufficient to ensure his legal success; however, the acquisition of unassailable proof of governmental wrongdoing is not the standard by which the federal discovery rule functions. *Id.* at 84 ("Critically, when the plaintiff knows or should know enough to prompt a claim, he may not yet know enough to win the suit. To win a suit may require the development of further facts, perhaps even the conduct of discovery and further study by experts." (citation omitted)). Metaphysical certainty is not a prerequisite. *Id.* at 85 ("[U]nder the discovery rule, definitive proof of wrongful conduct and government liability is not required to start the period for filing a claim."). Like a patient who knows he has been harmed by a specific physician, Plaintiff knew he had been harmed, in a most horrible way, by a Biddeford Police Officer (whether or not Dodd was acting under color of law) and could have been notified by an attorney of the potential of asserting claims against the City and Defendant Beaupre as well as the importance of engaging in reasonable investigation – if he had only asked. *Kubrick*, 444 U.S. at 122 ("If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff.").

Plaintiff did not exercise reasonable diligence in pursuing his claim. The facts underlying his claims against the City of Biddeford and Chief Beaupre were not inherently unknowable and yet, for his own personal and perhaps understandable reasons, Plaintiff buried his head in the sand. This choice was his to make but it does not obviate the statute of limitations. *See, e.g., Marrapese,* 749 F.2d at 943 ("[A] plaintiff's ignorance of the existence of a legal right of action based on his injury does not operate to delay accrual of his claim."). The federal discovery rule does not toll the running of the statute of limitations and, therefore, Plaintiff's claims against the City of Biddeford and Chief Beaupre are time barred.[10]

## CONCLUSION

For the foregoing reasons, Defendants Roger Beaupre and the City of Biddeford's Motion for Partial Summary Judgment (ECF No. 138) is **GRANTED.**

**SO ORDERED.**

Dated this 9th day of July, 2019

                                          /s/ Lance E. Walker
                                          U.S. DISTRICT JUDGE

---

[10] Because Plaintiff failed to file his claims against the City of Biddeford and Chief Beaupre within the applicable statute of limitations period, I need not address whether Defendant Dodd acted under color of law or whether Defendant Beaupre is entitled to qualified immunity. Both inquiries ultimately inform the question of the City of Biddeford and Chief Beaupre's liability, which, because Plaintiff's claims against them are time-barred, is now a moot issue.